## Rural Credit Subscribers' Association, et al. v. Jett, et al.

(Decided November 18, 1924.)

Appeal from Kenton Circuit Court.

1. Corporation—Subscription Contract is Between Subscriber and Corporation Itself.—Stock subscription contract is one between subscriber and corporation itself.

2. Corporations—Subscriber and Corporation are Only Proper Parties to Action to Cancel Subscription Contract.—Proper parties to

action to cancel subscription contract are the parties thereto, namely, subscriber and corporation itself, and no others are necessary or proper parties.

3. Corporations—Directors are Not Proper Parties Defendant to Action to Cancel Subscription Contract.—Corporate directors at time of fraudulent procurement of stock subscription are not proper parties defendant to action to cancel contract.

4. Action—Causes of Action for Cancellation of Subscription and for Deceit in Procurement Not Properly Joined.—Under Civil Code of Practice, section 83, cause of action against corporation for cancellation of stock subscription contract cannot be properly joined with one against individuals for deceit in procurement of subscription, because defendants are not the same, and one is equitable action, and the other at law.

5. Corporations—Creditors May Not Sue Directors for Fraudulent Expenditures, Unless Corporation or Trustee in Bankruptcy Fail to do so, and Petition Must so Allege.—Right to sue directors for money negligently, fraudulently, and unlawfully paid out lies primarily in corporation itself or its trustee in bankruptcy and not in creditors of corporation, who can sue only if corporation or trustee in bankruptcy fail to do so and petition must so allege.

6. Action—Causes of Action for Deceit in Procurement of Subscriptions, Held Not Joinable.—Causes of action for deceit in procurement of stock subscriptions existing in favor of numerous persons and against directors of corporation who engaged therein, held separate and distinct, and the parties without such community of interest as would, under Civil Code of Practice, section 25, or section 83, warrant a single action by some for all, or a joinder of the various causes.

J. A. EDGE and A. M. BAKER for appellants.

CLAUDE MERCER, WOODWARD, WARFIELD & DAWSON, JOHN MARSHALL, JR., CHARLES H. PERRYMAN, WALLACE MUIR, GEORGE C. WEBB, CHESTER D. ADAMS, J. M. LASSING, C. J. ELBRICK, S. D. ROUSE, MORGAN O. HUGHES, R. A. McDOWELL, BOOTH, McDOWELL & CONNOR, ROBERT C. SIMMONS, WILLIS & TODD, and ROBERT A. McDOWELL for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

The appellants instituted this action as plaintiffs in the court below. There are some twenty-three hundred of them and all of them were stockholders of the Kentucky Rural Credits Association, a Delaware corporation. The history of its creation and short but eventful life together with the part played in same by them and the defendants constitutes their cause of action. It ap-

pears that one O. L. Van Laningham, a resident of Kansas City, Missouri, was the "J. Rufus Wallingford" of the enterprise. He came to Kentucky some time in the year 1914 and interested a number of prominent men in the proposed business venture. The corporation was organized under the laws of the state of Delaware and was capitalized at one million dollars, its capital stock being divided into twenty thousand shares of the par value of $50.00 each. Its charter was filed in the office of the secretary of state of Delaware on October 1, 1914, and three citizens of that state appeared as the incorporators. On the following day those three men, as directors of the newly created corporation, held a meeting and for the corporation entered into a contract with Van Laningham by which they employed him as its fiscal agent to market its stock. By the contract Van Laningham undertook to market the stock and to be at all the expense in connection therewith and agreed to sell the stock, the par value of which was fixed at $50.00, for $100.00 per share. The corporation agreed that for his so doing it would pay him a commission of 25 per cent of the stock subscriptions taken by him. It was the plan, as set forth in the agreement, that Van Laningham should sell the stock with 25 per cent of each subscription payable in cash, the remainder to be paid in three equal installments due in three, nine and fifteen months from date of subscription; and that he should retain the entire cash payment as his commission. The making of that contract seems to have been about the only business transacted at that meeting. The scene of the corporation's activities was immediately transferred from Delaware to Lexington, Ky.; and the three residents of Delaware, who incorporated the company, seem to have thereupon made their final exit from the stage. A number of prominent Kentuckians were then elected to its board of directors and took up the management and control of its business affairs. While they served as directors Mr. Van Laningham, under his contract, employed a corps of trained stock salesmen and carried the stock-selling campaign into all parts of the Commonwealth. He sold some eighty-two hundred shares of stock at $100.00 per share. There seems to have been collected on these stock subscriptions something over $360,000.00. It appears that there was retained by Van Laningham, or paid to him

by the corporation out of the collections as his 25 per
cent commission, the sum of $201,000.00. It appears
that in the stock-selling campaign a printed "pros-
pectus," evidently a work of art both as to its contents
and as an example of the printer's art, was gotten out,
and they were scattered in large numbers throughout
Kentucky. It was the "bait" most successfully used
by the stock salesmen in procuring subscriptions. The
prospectus made prominent display of the names of the
men prominent in business and political circles who were
the directors and managers of the corporation's affairs,
and it set forth in alluring terms the purposes for which
the corporation was organized and its possibilities as a
business enterprise. It seems that the chief business
proposed to be engaged in by the corporation was the
lending of money to the farmers of Kentucky on their
real estate, and it was provided that no one could pro-
cure a loan from the company except its stockholders.
Shortly after the great number of people subscribed for
stock and paid the initial 25 per cent of their subscrip-
tions, numbers of them began to apply for loans. Owing
to the fact that the initial 25 per cent cash payment on
subscriptions had all been paid to Van Laningham, the
corporation found itself unable to engage in the busi-
ness for which it was organized, because it had no money
to lend. As may well be imagined, dissatisfaction with
that state of affairs soon manifested itself and the sub-
scribers in great numbers declined to meet the second,
third and fourth installments of their stock subscrip-
tions. A number of suits by individual subscribers were
filed for the cancellation of their subscription contracts.
The situation had become so acute that on July 15, 1916,
the board of directors of the corporation instituted in
the Fayette circuit court an equitable action for a re-
ceiver to wind up and settle its affairs. The receiver
was appointed, and among other things notified the
various stock subscribers that they would be required to
pay the balance due on their stock subscription. There-
upon a number of the subscribers for themselves and for
all the other subscribers filed a proceeding in bankruptcy
against the Kentucky Rural Credits Association asking
that it be adjudged a bankrupt and that the stockholders,
other than those who had been its officers and directors,
be adjudged to be creditors of the corporation, upon the
theory that their stock subscriptions had been pro-

cured by fraud and therefore were a nullity, and that they be permitted to prove and file claims against the estate of the bankrupt for the amount paid by them on their stock subscriptions. On that question the bankruptcy court referred the matter to a special commissioner, who reported that the stock subscriptions had been procured by false, fraudulent and reckless misrepresentations made to them by the agents of the corporation; that their stock subscriptions were void for that reason; and that the subscribers should be permitted to prove their claims in bankruptcy against the bankrupt for the amount paid by them on their subscriptions. The bankrupt court confirmed the commissioner's report; adjudged that the stockholders were creditors of the corporation; and permitted them to prove and file their claims against the bankrupt estate. The corporation was adjudged to be bankrupt and the matter was referred to the referee in bankruptcy to receive claims. The stock subscribers proved and filed their claims as debts against the corporation and elected a trustee in bankruptcy. It seems that a total of about 22 per cent has been paid to the stock subscribers on their claims against the bankrupt estate in that proceeding. The petition herein discloses the foregoing state of facts and by it the twenty-three hundred stock subscribers who are parties plaintiff, who sue for themselves and for all the other stock subscribers, sued the various individuals who at one time and another were the members of the board of directors and officers of the Kentucky Rural Credits Association. They ask judgment against appellees, defendants below, for the $201,000.00 paid to Van Laningham and for the total amount paid by all subscribers on their stock subscriptions. They contend that they are entitled to that relief because of the fraud practiced upon them by defendants in that they fraudulently kept from them the fact that the initial and cash installment of their subscriptions would be paid to Van Laningham and in the printed prospectus fraudulently made reckless and false statements of the corporation's financial condition, soundness and security. They seek to recover that money from appellees as individuals and to have the same paid to the trustee in bankruptcy to be distributed among them by him in the bankruptcy proceeding, according to their various interests in same. They seek

further to have their stock subscriptions cancelled and to have the corporation and its officers, agents and representatives enjoined from attempting to collect any more of same. The petition in the case now being considered was filed in the Kenton circuit court, but it appears from affidavits filed with certain motions in this record that on the same day it was filed six other causes of action in favor of appellants, the petition in each case being identical with the one in this case, were filed in six different circuit courts in this Commonwealth. A number of motions and special demurrers were filed by the various defendants. Upon the hearing of the motion made by the various defendants to require the plaintiffs to elect as to which of them would prosecute the cause of action upon the ground that there was a misjoinder of actions and that each of the plaintiffs had his separate cause of action for his individual relief, the court below sustained that motion and held that the causes of action were improperly joined and that the plaintiffs should elect which of them would prosecute his cause of action in this case. Appellants declined to elect and the court thereupon dismissed their petition and this appeal is prosecuted from that judgment. The correctness of the lower court's ruling on the motion to elect and his holding that the plaintiffs have separate causes of action for the relief sought by them that cannot properly be joined is the sole question to be determined by this appeal.

To summarize briefly, it appears that plaintiffs claim that their respective subscriptions of stock in the Kentucky Rural Credits Association were procured from them by fraud; that therefore they are entitled to have their stock subscriptions cancelled. They claim further that the individuals whom they sue were the officers and directors of the corporation at the time their stock subscriptions were taken and participated in the fraud by which their stock subscriptions were procured; that the individual defendants, while acting as directors and officers of the corporation, negligently and wrongfully paid to Van Laningham $201,000.00 and collected and dissipated all the rest of the money paid in by them on their stock subscriptions; that therefore they are entitled to have judgment against those individuals for $201,000.00 they wrongfully and negligently paid to Van Laningham and for all the other money paid in by them on their stock subscriptions.

A stock subscription is a contract between the individual subscribing for stock in the corporation and the corporation itself. The proper parties to an action for the cancellation of such a contract on the ground that it was procured by fraud are the parties to the contract. No one else is a necessary or proper party to such a suit. Thus the parties seeking to have these stock subscriptions cancelled had to sue the corporation, but there was on that branch of the case no occasion to sue and it was improper to sue the individuals who were made parties defendant. It requires no extended argument to demonstrate that a cause of action for a cancellation of a stock subscription against a corporation can not properly be joined with a cause of action against individuals for deceit in procuring the stock subscriptions, because the defendants in the one case are not the defendants in the other. The causes of action so sought to be joined do not affect all the parties defendant. Neither could two such actions be prosecuted in the same kind of action. The one is inherently an action in equity while the other is purely an action at law. Hence under section 83 of the Civil Code they may not be joined. Supplemental to the foregoing on this question, the petition with great particularity points out that in the bankruptcy proceeding the federal court, with jurisdiction of the parties and subject matter, has adjudged the specific relief sought by adjudging that the stock subscribers are not stockholders but are creditors of the corporation to the extent of the money paid by them on their stock subscriptions and they have proved and filed their claims and participated in the distribution of the proceeds of the assets of the corporation, such as have come to the hands of the trustee in bankruptcy.

With reference to the other relief sought by them, after carefully considering the matter we do not understand that the item of $201,000.00 paid to Van Laningham occupies a place to itself or may be treated separately. Reduced to a final analysis, the thing appellants are undertaking to do, is, upon their theory that each and all of them were induced by the fraud of appellees to subscribe for stock in the corporation and to pay part of their subscriptions, all of which has been lost by them, to recover from appellees what they so paid and lost as the damages resulting from the fraud. That being true, and it can not but be so, the details as to how and to whom

and in what amounts the money paid by them on their stock subscriptions was dissipated by the corporation, may be of value as evidence in the case, but not otherwise. If the $201,000.00 was negligently or fraudulently and unlawfully paid to V'an Laningham by the appellees while they were directors of the corporation the corporation or its trustee in bankruptcy may have a cause of action against them to recover same. The right to sue for same primarily would lie in the corporation or its trustee in bankruptcy. If the alleged negligent, fraudulent and unlawful payment of the $201,000.00 was, the only transaction relied upon by appellants and its recovery for their benefit as creditors of the corporation. was the only relief sought by them, they, as creditors of the corporation, might sue for its recovery if the corporation or its trustee in bankruptcy had refused to do so and the petition so alleged. But as appellants brought their suit the $201,000.00 item or transaction is merely one of the details, because the twenty-three hundred appellants, for themselves and all other subscribers of stock in the corporation, sue to recover from appellees not only the $201,000.00 but also the total amount paid by all of them on their stock subscriptions, which they allege is more than $360,000.00, their right to do so being predicated upon the alleged fraud of appellees in procuring their subscriptions, the amount paid on same being the damages resulting to them from the fraud. As the suit was brought the lesser transaction was swallowed by the larger. They joined themselves together in bringing the lawsuit and seek to justify their having done so upon the ground that they were each induced by the same fraud to sign the stock subscriptions; that is, that each of them was induced by the false and fraudulent statements made in the printed prospectus of the company to subscribe for its stock; therefore, they contend that they can all join together in one cause of action and recover in a lump sum the aggregate amount of damages suffered by all of them and have it paid over to the trustee in bankruptcy and distributed by him to them. It seems to us that the answer to this contention is obvious.

Section 83 of the Civil Code permits the uniting or joinder of several causes of action upon the subjects of litigation specified in the six subsections of the section "if each affect all the parties to the action, may be brought in the same county, and may be prosecuted by

the same kind of action." If the stock subscription of any of the plaintiffs was procured by the fraud of the defendants jointly or that of any one or more of them, such of the defendants as participated in the fraud are liable to that plaintiff for the damages suffered by him as a result of that fraud; but none of the other plaintiffs are entitled to share with that particular one in his recovery. How can it be said that the numerous causes of action affect all the parties sought to be joined as parties plaintiff or for that matter all those sought to be joined as parties defendant? Each party plaintiff has his own cause of action to recover what he lost by the fraud which he can recover from such and only such of the defendants as participated in the fraud; but no other party plaintiff has the right to participate in his recovery. Neither has such a plaintiff the right to participate in the recovery of any other party plaintiff. The Code expressly requires that each of the causes of action must affect all the parties. In this case it seems to us that none of the causes of action affect any of the parties to any of the other causes of action. The cause of action of plaintiff No. 1 does not affect any of the other 2,299 parties plaintiff. So with all the other causes of action sought to be joined. The alleged fraud was perpetrated upon the various plaintiffs at different times and places. Each of them has his separate cause of action which in no wise affects the parties to the other causes.

Section 25 of the Code provides:

"If the question involve a common or general interest of many persons, or if the parties be numerous and it is impracticable to bring all of them before the court within a reasonable time, one or more may sue or defend for the benefit of all."

The construction given that section of the Code in Bateman, Jr. v. Lou. Gas & Electric Co., 187 Ky. 659, refutes appellants' contention that under it one suit might be brought for all. There is wholly lacking that community of interest authorizing that to be done. Plaintiffs have no common or general interest in the various causes of action sought to be joined. They have similar but entirely separate and distinct causes of action, which under our Code, as uniformly construed, may not be joined under section 83 or may not be brought into a

single suit by some for all of the parties under section 25. As this opinion is unduly long, we will content ourselves with merely referring to the Bateman case above, an outstanding case on the question.

Concluding, the court is of the opinion that each of the parties plaintiff has his action for deceit against such of the defendants as may have participated in the fraud; that they are separate and distinct causes of action; and that there is no such community of interest as is contemplated by either section 83 or section 25 of the Civil Code as to authorize the joinder of the various actions or a single suit by some for all the parties plaintiff.

Wherefore, the judgment of the lower court is affirmed.